IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| TAMARA JONES and MARTAVIOUS HENDERSON, | * * * |
| Plaintiffs, | * * |
| v. | * Civil Action No. AW-10-0309 |
| | * |
| BALWANT BAGALKOTAKAR, M.D., P.A., *et al.*, | * * * |
| Defendants. | * * |

**MEMORANDUM OPINION**

The Court has reviewed the entire record, as well as the pleadings and exhibits, with respect to the instant Motions. The issues have been fully briefed and no hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated more fully below, the Court **DENIES** Defendants' Preliminary Motions to Dismiss. (Doc. Nos. 3, 7).

## I. FACTUAL AND PROCEDURAL BACKGROUND

The instant case arises from the series of events leading to the death of the infant Khamari Henderson. On May 18, 2006, the Plaintiffs, Tamara Jones and Martavious Henderson (Plaintiffs), took the child to Defendant Holy Cross Hospital of Silver Spring, Inc. ("Holy Cross"), with complaints of vomiting, diarrhea, and choking. Khamari's vital signs revealed tachycardia and tachypnea, and she began vomiting upon feeding in the emergency room. She was examined in the emergency room by Defendant Dr. Raymond Magnus White ("White"), a board certified internist and emergency care doctor, who instructed the Plaintiffs to give the child Pedialyte and to see a pediatrician.

On May 22, 2006 the Plaintiffs brought Khamari to be examined by their pediatrician, Defendant Dr. Balwant Bagalkotakar. The medical records for Dr. Bagalkotakar list this visit as

1

a "check up" and the autopsy report reveals that the history given to the doctor was the same given during the visit to Holy Cross. On May 30, 2006, Khamari was again brought to Dr. Bagalkotakar who examined her and found her to be having convulsions. The doctor instructed Plaintiffs to bring the child to the Children's Hospital National Medical Center in the District of Columbia. They took the child to the hospital where she was found to be dehydrated and acidotic. After being transferred to the Pediatric Intensive Care Unit fluid resuscitation was attempted, and the child fell into cardiac arrest and subsequently died. The autopsy revealed the cause of death to be occlusive thromboemboli of the pulmonary trunk and both major pulmonary arteries as complications of dehydration.

The Plaintiffs, the parents of the decedent, Khamari Henderson, have waived arbitration and brought this Wrongful Death Action under the Maryland Courts & Judicial Proceedings Article, Sections 3-901 *et seq.* Md. Code Ann (2010). They have named the following as Defendants: Balwant Bagalkotakar, M.D., P.A.; Holy Cross Hospital of Silver Spring, Inc.; Silver Spring Emergency Physicians , P.C. ("SSEP") and Raymond Magnus White, M.D.

Plaintiffs have filed two Certificates of Qualified Expert from Dr. Stephen Marc Krenytzky, a board certified pediatrician concerning the treatment of the decedent by Dr. Bagalkotakar and Dr. White. Both Holy Cross and SSEP together with White have filed Preliminary Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted, or, alternatively, 12(b)(1), for lack of subject matter jurisdiction. Both motions claim, identically, that the Plaintiffs have failed to meet a mandatory prerequisite for the institution of a medical malpractice claim by filing an improper Certificate of Qualified Expert and Report and thus have not properly waived out of mandatory arbitration required by the Maryland Healthcare Malpractice Claims Act. *See* Md. Code Ann. Cts. & Jud. Proc. Art. 3-901 *et seq.* (2010). Holy Cross Hospital additionally incorporates and

adopts the motion of SSEP and White. (Doc. No.7 at 5). Plaintiffs have responded to the Motions and Defendants have filed reply briefs.

## II. STANDARD OF REVIEW

### a. Dismissal under Rule 12(b)(1)

There are two ways to present a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). First, a party may contend "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). In this situation, "the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.* Second, a party may contend that the jurisdictional allegations in the complaint are not true. *Id.* In the latter situation, the Court may conduct an evidentiary hearing and consider matters beyond the allegations in the complaint. *Id.*

### b. Dismissal under Rule 12(b)(6)

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In two recent cases, the United States Supreme Court clarified the standard applicable to Rule 12(b)(6) motions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Those cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief."

*Twombly*, 550 U.S. at 556 n.3 (2007). That showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In its determination, the Court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). In addressing a motion to dismiss, a court should first review a complaint to determine what pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949-50. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Indeed, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Id.* at 1954. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

### III.  ANALYSIS

The provisions of the Health Care Malpractice Claims Act ("the Act"), Md. Code Ann. Cts. & Jud. Proc. Art. § 3-2A-01, *et seq.* (2010), are binding in diversity matters in federal court. *See Rowland v. Patterson*, 882 F.2d. 97, 99 (4th Cir. 1989); *Davison v. Sinai Hospital of Baltimore, Inc.*, 462 F.Supp. 778 (D. Md. 1978), aff'd, 617 F.2d 361 (4th Cir. 1980). Compliance with the Act, where applicable, is a prerequisite to bringing a diversity suit in federal court. *Group Health Ass'n v. Blumenthal*, 295 Md. 104, 453 A.2d 1198 (1983). Defendants SSEP, White, and Holy Cross assert that Plaintiffs have not fulfilled the mandatory

prerequisite of filing a Certificate of Qualified Expert and Report that Maryland requires before arbitration can be waived. Specific to the question of this case, the Court in *Lewis v. Waletzky*, 576 F.Supp. 2d 732, 736 (D. Md. 2008) ruled that ,

> Although the Act has been amended to allow a plaintiff to unilaterally waive the Act's arbitration requirement, the Act still requires a potential plaintiff to file her claim and a certificate of qualified expert with HCADRO and to follow specific procedures for waiver of arbitration prior to filing her claim in state or federal court.

As a result of Plaintiffs' alleged failure, Defendants claim a medical malpractice action cannot be instituted in court pursuant to Maryland statute. §3-2A-06B(a). The Act describes the requirements of the expert executing the certificate of a qualified expert and attesting report; it states:

> (ii) 1. In addition to any other qualifications, a health care provider who attests in a certificate of a qualified expert or testifies in relation to a proceeding before a panel or court concerning a defendant's compliance with or departure from standards of care:
>
>> A. Shall have had clinical experience, provided consultation relating to clinical practice, or taught medicine *in the defendant's specialty or a related field of health care, or in the field of health care in which the defendant provided care or treatment to the plaintiff*, within 5 years of the date of the alleged act or omission giving rise to the cause of action; and
>>
>> B. Except as provided in item 2 of this subparagraph, if the defendant is board certified in a specialty, *shall be board certified in the same or a related specialty as the defendant*.

Md. Code, Cts. & Jud. Proc. § 3-2A-02(c)(2)(ii) (2010)(emphasis added).

The Plaintiffs have engaged Dr. Marc Krenytzky, a board certified pediatrician, to draft the certificate of a qualified expert that is required for trial. Defendants Holy Cross, SSEP, and White assert that this Dr. Krenytzky does not meet the qualifications of this segment of the statute because he is a board certified pediatrician – neither a board certified internist nor an emergency care physician as Defendant Dr. White is. Defendant SSEP and Defendant White state:

> If a board certified emergency physician is held to the standard of a reasonably competent board certified emergency physician, as Md. Code Ann., Cts. & Jud. Proc. § 3-2A-02(c)

> provides, then it logically (and legally) follows that the care of a physician with those credentials must be evaluated by another physician with the same credentials. … White is board certified in internal medicine and, more saliently, in emergency medicine. Krenytzky, Plaintiffs' pediatric expert, is not.

(Doc. No. 3, at 5)

Defendants ask for a reading of the statute that is beyond strict, particularly with regards to the concepts of related specialty and related field of healthcare. To be sure, the Defendants have offered neither example nor reasoning for what a related field of healthcare or specialty could be. Instead, it is the assertion of the Defendants that only a healthcare provider of the same qualifications can meet this standard.

> Holy Cross Hospital states:
>
> Plaintiffs' Certificate of Qualified Expert fails to comply with the above requirement with regard to Defendant White and therefore, Defendant Holy Cross. Defendant White is board certified in emergency medicine. Dr. Krenytzky is not. Rather, Dr. Krenytzky is board certified in pediatrics and thus, not qualified to execute the Certificate of Qualified Expert . . . .

(Doc. No. 7 P.5) (internal citations omitted).

When examining the meaning of a statute, "we first look to the normal, plain meaning of the language. … If that language is clear and unambiguous, we need not look beyond the provision's terms.…" *Bienkowski v. Brooks*, 386 Md. 516, 536, 873 A.2d 1122, 1134 (2005); *Davis v. Slater*, 383 Md. 599, 604, 861 A.2d 78, 81 (2004). "Moreover, when the meaning of a word or phrase in a constitutional or statutory provision is perfectly clear, this Court has consistently refused to give that word or phrase a different meaning on such theories that a different meaning would make the provision more workable, or more consistent with a litigant's view of good public policy, or more in tune with modern times, or that the framers of the provision did not actually mean what they wrote." *Bienkowski*, 386 Md. at 537, 873 A.2d at 1134.

It is clear from a plain reading of the statute that three types of individuals meet the Act's standard for a certifying expert or expert in a proceeding when the defendant doctor has a board

certification. A practicing individual licensed in the same specialty as a defendant doctor meets the qualifications.[1] It is also clear that if a health care provider undertakes medical care outside of their specialty, then a healthcare provider certified in that specialty is qualified.[2] And, while the legislature has provided that an individual certified in a "related specialty" and practices "in a related field," it has not outlined out what a related field of health care or related specialty is.[3] Therefore, the Court will evaluate the history of the Maryland Health Care Malpractice Claims Act to determine the legislature's intent so that its interpretation will be informed by that intent.

The history of the Act receives extensive discussion in the case that Plaintiffs have cited *Debbas v. Nelson*. 389 Md. 364, 375-80 (2005). In *Debbas*, the court explains that the Act was intended to create stricter standards in light of a crisis in medical malpractice insurance that began in the 1970s. *Id.* at 375. The crisis was cause by increased litigation that resulted in a number of insurers to cease underwriting in Maryland. *Id.* The law has continuously evolved in response to the ongoing developments in medical malpractice insurance, receiving multiple changes and undergoing review and analysis from several committees and taskforces. *Id*. at 375-80.

The court in *Debbas*, as Plaintiffs point out, determined that the legislative intent of the certificate requirement was to serve as a preliminary showing. The Court held, "The strictly limited time period provided for securing a valid Certificate of Qualified Expert demonstrates the General Assembly's intention that the findings and opinions contained therein would be preliminary. To interpret the statute otherwise might effectively preclude many malpractice suits from ever proceeding on the merits." *Id*. at 383. Thus, the certificate requirement is a threshold

---

[1] The Act states that an expert healthcare provider, "shall have had clinical experience… in the defendant's specialty...;" additionally, an expert, "shall be board certified in the same… specialty as the defendant." Md. Code, Cts. & Jud. Proc. § 3-2A-02(c)(2)(ii)(2010).
[2] The Act states that an expert healthcare provider, "shall have had clinical experience… in the field of health care in which the defendant provided care or treatment to the plaintiff…" *Id*.
[3] *See Id.*

7

matter, acting as a net to catch frivolous claims and require a more rigorous initial investigation before a matter is brought before a court.

The statute did not have the specific language concerning the definition of a qualified expert cited above until 2005. *See* Md. Code, Cts. & Jud. Proc. § 3-2A-02(c)(2)(ii) (2010). This is perhaps a result of legal precedent such as *Estate of Alcalde v. Deaton Specialty Hosp. Home, Inc.*, 133 F. Supp. 2d 702 (D. Md. 2001), where a non doctor was allowed to be a qualified expert based on a lack of statutory definition of the term. However, the General Assembly's consideration at every stage of legislative development of the Act included concern for the rights of plaintiffs to bring cases with true harm. *Debbas* at 809-12.

Additional guidance on the meaning of the terms "related specialty" or "related field of healthcare" is unavailable in the Act's legislative history or case law in Maryland. However, Virginia has included an identical standard in their medical malpractice law that has been interpreted by their state courts, the Virginia Supreme Court, the United States District Court for the Eastern District of Virginia, and by the Fourth Circuit. *See Daniel v. Jones* 39 F. Supp. 2d 635, 647-49 (E.D. Va. 1999), aff'd *Daniel v. Pearce*, 213 F.3d 630 (4th Cir. 2000); *Sami v. Varn*, 260 Va. 280 (Va. 2000); *Moolchandani v. Sentara Hosp.*, 68 Va. Cir. 293 (Va. Cir. Ct. 2005). The relevant statute, Va. Code § 8.01-58.20(A) includes the language:

> A witness shall be qualified to testify as an expert on the standard of care if he demonstrates expert knowledge of the standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards *and if he has had active clinical practice in either the defendant's specialty or a related field of medicine* within one year of the date of the alleged act or omission forming the basis of the action. (emphasis added).

In a case bearing similarity to the one at bar, the Virginia Supreme Court interpreted their statute, analogous to the statute at issue in this case. *Sami v. Varn*, 260 Va. 280 (2000). The Court ruled that an obstetrician-gynecologist was qualified as an expert despite not having the emergency medicine certification of the defendant physicians because the obstetrician had

knowledge of the standard of care applicable to the procedure at issue. *Id*. at 284  The court specifically stated,

> Dr. Roberts' lack of knowledge regarding certain procedures of emergency medicine might disqualify him from rendering expert testimony as to those procedures, *but that lack of knowledge does not preclude him from giving expert testimony on procedures which are common to both emergency medicine and the field of obstetrics-gynecology* and are performed according to the same standard of care.

*Id*. (emphasis added).

Directly addressing the interpretation of the statute the Court stated:

> The phrase ["related field of medicine"] contemplates a clinical practice which differs from that of the defendant, but the statute provides no guidance for determining whether a clinical practice is "related." The purpose of the requirement in § 8.01-581.20 that an expert have an active practice in the defendant's specialty or a related field of medicine is to prevent testimony by an individual who has not recently engaged in the actual performance of the procedures at issue in a case. Therefore, we conclude that, in applying the "related field of medicine" test for the purposes of § 8.01-581.20, it is sufficient if in the expert witness' clinical practice the expert performs the procedure at issue and the standard of care for performing the procedure is the same.

*Id.* at 285

The Circuit Court of Norfolk employed *Sami* to hold that the proper analysis of whether two fields are related in medical practice centers on the procedure at issue. *Moolchandani v. Sentara Hosp.*, 68 Va. Cir. 293, 295-96 (Va. Cir. Ct. 2005).  They state, "The statute's requirement that an expert have an active clinical practice in Defendant's specialty or a related field of medicine is to prevent testimony by an individual who has not recently engaged in the actual performance of the procedures at issue in this case.  An expert witness must have sufficient knowledge of the applicable standards of care for the medical procedures." *Id.* (citing *Sami v. Varn*, 260 Va. 280, 283 (2000), holding that related fields of medicine mean that a medical procedure can be performed by both specialties).

Likewise, the United States District Court for the Eastern District of Virginia assessed this issue in *Daniel v. Jones* where they held a physician in a different specialty met the qualifications of an expert because, among other reasons, his practice involved treating patients

9

with similar issues to the plaintiff in the matter. 39 F. Supp. 2d 635, 647-49 (E.D. Va. 1999), *aff'd Daniel v. Pearce*, 213 F.3d 630 (4th Cir. Va. 2000).

Reviewing the Virginia precedent for determining what constitutes a "related field" is instructive to this Court's determination as to what constitutes a "related field" for purposes of the Maryland Healthcare Malpractice Claims Act. Virginia first identifies the key procedures involved in a case; then their courts determine whether its performance is common and has a similar standard across the specialties at issue. If the procedures are performed by both specialties with similar standards of care, then the specialties are related. This analysis provides an effective tool to ensure that experts have the requisite knowledge to qualify a claim. Indeed this analysis meets the purpose of the Maryland Health Care Malpractice Claims Act as exclaimed by Defendants who state, "The clear purpose of this section [Md. Code Ann., Cts. & Jud. Proc. § 3-2A-02(c)(2)(ii)], which was part of the 2005 reform of the Act, is to prevent hired gun experts from freely roaming outside of their chosen fields, and opining on standards of care that they cannot possibly address, based on the scope of their training and certifications." (Doc. 3, at 5). This Court agrees with that statement of purpose. However, the Court does not agree that a pediatrician is unqualified to opine on the standard of care regarding a child, "based on the scope of their training and certifications."

The Court specifically asks several questions, based upon the analysis gleaned from the Virginia standard, to establish whether two specialties are related for purposes of the Act (Md. Code Ann., Courts & Judicial Proceedings § 3-2A-02(c)(2)(ii) (2010)):

> (1) What is the procedure or procedures at the source of the claim?; (2) Is the procedure common to the two specialties?; (3) What experience does the purported expert doctor have with this specific procedure?; and, (4) is the standard of care applicable to the procedure common to both?

If the procedure is one which both healthcare providers have experience with and the standard of care is purported to be similar, then the expert's qualifications satisfy the

10

requirements of the Act. If a procedure is common to two specialties, an inference of relation is created between the two specialties. However, if the procedure is one which the purported expert does not have experience or performs with a meaningfully different standard of care, then the expert does not qualify under the Act.

In the case at bar, the procedure is the examination of a child who has fallen ill. Both Dr. White, as an internist and emergency medicine doctor, and Dr. Krenytzky, as a pediatrician, are qualified by their specialties and training to perform the procedure and, thus, there is an inference that the specialties are related for purposes of the Act. Dr. Krenytzky has experience with the procedure because he is a practicing pediatrician who should, therefore, regularly engage in the examination of children. Finally, there have been no arguments presented that the standard of care is strongly different between the procedure as performed by the two healthcare providers. Nor does the fact that the examination was performed in an emergency room appear to change the standard of care involved in the procedure.

Consequently, in terms of the examination of the decedent, Khamari Henderson, the Court does not find that the specialties of the Defendant Dr. White and the certifying expert Dr. Krenytzky are unrelated. The Defendants are free to bring evidence at trial to discount the preliminary finding of this expert. However, the Court is unwilling at this point to disqualify the expert under a reading of the statute that is stricter than the statute is written or could be rationally interpreted.

Therefore, the Plaintiffs have fulfilled the condition precedent of the Maryland Health Care Malpractice Claims Act. Thus, It is then improper to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Furthermore, the Plaintiffs have sufficiently pled the claim so as to preclude dismissal under Federal Rule of Civil Procedure 12(b)(6). As a result, the Plaintiffs have alleged sufficient facts which, when taken as true, establish a plausible claim upon which relief may be granted.

Thus, the respective Preliminary Motions to Dismiss of Silver Spring Emergency Physicians, P.C. and Dr. Raymond Magnus White, and Holy Cross Hospital of Silver Spring, Inc. are **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Preliminary Motions to Dismiss. A separate Order will follow.


Date:   <u>November 15, 2010</u>                              /s/
                                                         Alexander Williams, Jr.
                                                         United States District Court